IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> THE BABY FOLD and THE CHICAGO TRUST CO., AS ADMINISTRATOR OF THE ESTATE OF KIANNA RUDESILL, <br><br> Defendants. <br><br> THE BABY FOLD, <br><br> Counter-Plaintiff, <br><br> v. <br><br> PHILADELPHIA INDEMNITY INSURANCE COMPANY and THE CHICAGO TRUST CO., AS ADMINISTRATOR OF THE ESTATE OF KIANNA RUDESILL, <br><br> Counter-Defendants. | Case No. 16-cv-10161 <br><br> Hon. Joan H. Lefkow <br> Magistrate Sidney I. Schenkier |

**PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CHICAGO TRUST CO.'S COUNTERCLAIM**

The Chicago Trust Co.[1] ("Chicago Trust"), as Administrator of the Estate of Kiana Rudesill, has filed a counterclaim [Dkt. 45] (the "CTC Counterclaim") concerning the policy limits available for Baby Fold's liability in the Underlying Lawsuit[2] under certain primary and excess

---

[1] The Chicago Trust Company has replaced James Rudesill as the Independent Administrator of the Estate of Kianna Rudesill. Dkt. No. 38, 42.

[2] The Underlying Lawsuit is described in Paragraphs 7 through 19 of the CTC Counterclaim.

insurance policies that Philadelphia Indemnity Insurance Company ("PIIC") issued to The Baby Fold ("Baby Fold") in effect for a policy period of March 1, 2010 to March 1, 2011 (separately the "2010 Primary Policy" and the "2010 Excess Policy," or collectively, the "2010 Policies") and a policy period of March 1, 2011 to March 1, 2012 (separately the "2011 Primary Policy" and the "2011 Excess Policy," or collectively, the "2011 Policies"). Specifically, the CTC Counterclaim seeks declarations that: (1) the Underlying Lawsuit against Baby Fold is covered for the combined limits of the 2010 and 2011 Policies; and (2) the 2010 Excess Policy and the 2011 Excess Policy each provide a separate $5 million primary limit of liability for the Underlying Lawsuit.

The allegations in the CTC Counterclaim lack merit. The plain language of the Primary and Excess Policies – which are incorporated into the CTC Counterclaim as exhibits, or by reference to exhibits previously filed – refute Chicago Trust's allegations.[3] Thus, PIIC moves this Court under Fed. R. Civ. P. 12(b)(6) to dismiss the CTC Counterclaim for failure to state a claim for which relief can be granted.

## Background Facts

Count I of the CTC Counterclaim alleges there is coverage under the 2010 Policies because the Complaint in the Underlying Lawsuit alleges an injury arising from an occurrence during the

---

[3] The 2010 Primary Policy and the 2010 Excess Policy are attached as Exhibits C and D, respectively, to the CTC Counterclaim. The CTC Counterclaim incorporates by reference the 2011 Primary Policy and the 2011 Excess Policy, where are attached as Exhibits D and E, respectively, to PIIC's Complaint (Dkt. 1). Chicago Trust agrees that "Pursuant to the 2010 Primary Policy's Form Schedule, the 2010 Primary Policy provides the same coverage under the same forms contained in the 2011 Primary Policy." (Counterclaim ¶25.) Likewise, Chicago Trust contends the 2010 and 2011 Excess Policies use the same language for any issues material in this litigation. (*See, e.g.*, CTC Counterclaim ¶¶47-54.) Because Chicago Trust contends (and PIIC agrees) the language in the 2010 and 2011 Primary and Excess Policies is the same for all issues material to this litigation, PIIC's references to the terms of the Policies herein refer to the identical provisions in both the 2010 and 2011 Policies, unless specified.

2

policy period of the 2010 Policies. (CTC Counterclaim ¶¶37-45 and Prayer.) Count II of the CTC Counterclaim alleges that the 2010 and 2011 Excess Policies both "drop down" as umbrella coverage to provide two $5 million dollar limits of liability for the Underlying Lawsuit. In support of that proposition, Chicago Trust contends the 2010 Excess Policy Declaration page sets forth that the 2010 Excess Policy provides coverage up to $5 million per occurrence and $5 million in the aggregate. (Counterclaim ¶47.) Chicago Trust further contends the 2011 Excess Policy Declaration page sets forth that the 2011 Excess Policy provides coverage up to $5 million per occurrence and $5 million in the aggregate. (Counterclaim ¶48.) In addition, Chicago Trust contends both the 2010 Excess Policy and the 2011 Excess Policy include the following provision in the Insuring Agreement under Section I – Coverage:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit", whether or not collectible, which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "occurrence" or "personal injury" or "advertising injury" to which this insurance applies . . . .

(CTC Counterclaim ¶49.) Chicago Trust alleges the 2010 Excess Policy does not include an exclusion for sexual or physical abuse or molestation. (Counterclaim ¶50.) Chicago Trust further alleges the 2011 Excess Policy does not include an exclusion for sexual or physical abuse or molestation. (CTC Counterclaim ¶51.) Further, Chicago Trust contends under the 2010 Excess Policy terms and provisions, PIIC provides coverage to Baby Fold for the Underlying Lawsuit up to $5 million per occurrence and $5 million in the aggregate. (Counterclaim ¶ 52.) Chicago Trust alleges there is no dispute that the 2011 Excess Policy provides coverage to Baby Fold for the Underlying Lawsuit. (CTC Counterclaim ¶53.) Chicago Trust also alleges that under the 2011 Excess Policy terms and provisions, PIIC provides coverage to Baby Fold for the Underlying Lawsuit up to $5 million per occurrence and $5 million in the aggregate. (CTC Counterclaim ¶54.)

In its prayer for relief, Chicago Trust seeks an order holding that both the 2010 and 2011 Excess Policies are triggered and afford coverage for Baby Fold in the Underlying Lawsuit.

In Count III, Chicago Trust alleges that Baby Fold is covered for the allegations in the underlying action by both the 2010 and 2011 Sexual or Physical Endorsement under both the 2010 and 2011 Excess Policies, in the amount of $250,000. Chicago Trust contends Endorsement PI-CXL-043-IL (02/06), provides, in pertinent part, as follows:

> "This Policy is intended to include the Sexual or Physical Abuse or Molestation Liability Coverageform (sic), but only with the limits set forth below. These limits are included within, and not excess of, nor in addition to the Limits of Insurance stated in the Declarations.
>
> SEXUAL OR PHYSICAL ABUSE OR MOLESTATION LIABILITY COVERAGE SUBLIMITS:
>
> Each "Abusive Conduct" Limit 250,000
>
> Aggregate Limit 500,000
>
> All other terms and conditions of this Policy remain unchanged."

(CTC Counterclaim ¶56.)

Chicago Trust alleges in Count III, Endorsement PI-CXL-043-IL (02/06) references the Sexual or Physical Abuse or Molestation Liability Coverage form, which is included in the 2010 and 2011 Primary Policies. (CTC Counterclaim ¶57.) Chicago Trust further alleges that under the 2010 Primary Policy, the Sexual or Physical Abuse or Molestation Liability Coverage form (the "Physical Abuse Form") provides separate and distinct coverage, pursuant to a separate and distinct Insuring Agreement and Declarations page, with separate and distinct coverage limits. (CTC Counterclaim ¶58.) In addition, Chicago Title asserts that the Physical Abuse Form under the 2011 Primary Policy provides separate and distinct coverage, pursuant to a separate and distinct Insuring Agreement and Declarations page, with separate and distinct coverage limits. (CTC

4

Counterclaim ¶59.) Chicago Trust contends the 2010 Excess Policy and the 2011 Excess Policy each provide coverage, pursuant to Endorsement PI-CXL-043-IL (02/06), which references the Sexual or Physical Abuse or Molestation Liability Coverage, with limits up to $250,000 per occurrence and $500,000 in the aggregate. (CTC Counterclaim ¶60.) Chicago Trust alleges PIIC does not dispute that the 2011 Excess Policy Endorsement PI-CXL-043-IL (02/06) provides coverage up to $250,000 per occurrence and $500,000 in the aggregate. (CTC Counterclaim ¶61.) In its prayer for relief on Count III, Chicago Trust seeks a declaration that both the 2010 and 2011 Excess Policy endorsements provide coverage for the Underlying Lawsuit.

### **Argument**

On consideration of a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded facts as true. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Dismissal is proper if, after drawing all inferences in the plaintiff's favor, the complaint fails to include facts sufficient to state a claim. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009).

Seventh Circuit law is clear that on 12(b)(6) a motion to dismiss, the court need not accept allegations pleaded by the claimant if those allegations are contradicted by exhibits attached to the complaint. *See, e.g.*, *Larson v. Citimortgage, Inc.*, No. 08 C 5178, 2009 WL 528690, *3 (N.D. Ill. Feb. 25, 2009). In *Larson*, the court granted a 12(b)(6) motion to dismiss where the text of an attached exhibit contradicted the factual predicate of the plaintiffs' claims as pleaded in the Complaint:

> The law is clear that the Court may consider the Payment statement, which was attached to the Complaint as Exhibit A, in determining whether dismissal is proper. See *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452-55 (7th Cir. 1998). According to the Seventh Circuit, "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Id.* at 454. The Court is not bound by a "party's

5

characterization of an exhibit and may independently examine and form its own opinions about the document." *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). Thus, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Northern Indiana Gun & Outdoor Shows*, 163 F.3d 449 at 455.

*Id.* The *Larson* court dismissed claims that the defendant had impermissibly required the plaintiffs to overpay the interest due on their mortgage, finding that the payoff statement attached as an exhibit to the complaint "on its face clearly contradicts Plaintiffs' claims that Defendant required them to pay excessive interest in order to pay their mortgage in full" and was "not a demand for payment for a specific amount due as of a chosen closing date[.]" *See also Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (affirming grant of a Rule 12(b)(6) motion, and holding that "where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim").

> In a dispute regarding coverage limits under an insurance policy,
>
> [The] primary objective in construing the language of a policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, but if the terms are susceptible to more than one meaning, they are considered ambiguous. Courts will not strain to find ambiguity in an insurance policy where none exists.

*McKinney v. Allstate Ins. Co.*, 722 N.E. 2d 1125, 1127 (Ill. 1999). (citations omitted.) Further, "[a]n insurance contract should be construed as a whole, and the construction given the policy should be a natural and reasonable one." *de los Reyes v. Travelers Ins. Cos.*, 553 N.E. 2d 301, 304 (Ill. 1990) (citations omitted.); *Western Cas. & Sur. Co. v. Brochu*, 475 N.E. 2d 872, 878 (Ill. 1985) (holding property damage at issue is not covered by the policy because "coverage is subject to the limitations of each and every exclusion.")

I. **COUNTS II AND III OF THE COUNTERCLAIM FAIL TO STATE A CLAIM BECAUSE THE 2010 AND 2011 POLICIES LIMIT TOTAL COVERAGE FROM PIIC TO A SINGLE PRIMARY AND EXCESS LIMIT OF LIABILITY FOR "ONE ABUSIVE CONDUCT"**

Count II and Count III the CTC Counterclaim seeks an order stating there is coverage under both the 2010 Policies and the 2011 Policies for the Underlying Lawsuit. However, under the plain language of the 2010 and 2011 Policies, PIIC's liability for the abusive conduct as alleged in the Underlying Lawsuit is limited to a single Primary and Excess limit of liability for one policy year only. The provisions of the 2010 and 2011 Policies prohibit the stacking of limits of liability, such that the limits of liability under both the 2010 and 2011 Policies cannot all be triggered by the Underlying Lawsuit. Moreover, because the 2010 Policies, on the one hand, and the 2011 Policies, on the other hand, provide identical total limits of liability, the existence of coverage under the 2010 Policies versus coverage under the 2011 Policies is a moot issue for determining what total limits of liability could be available for the purpose of satisfying a judgment or providing payment for a settlement of the Underlying Lawsuit.

As included in the foregoing SECTION III, Paragraph 2 of the Physical Abuse Form in the 2010 and 2011 Primary Policies, "abusive conduct" is defined under SECTION V – DEFINITIONS, Paragraph 2 as follows:

2. "Abusive conduct" means each, every and all actual threatened or alleged acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct performed by one person or two or more people acting together. Each, every and all actual, threatened or alleged acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct committed by, participated in by, directed by, instigated by or knowingly allowed to happen by one or more persons shall be considered to be on "abuse conduct" regardless of:

    a. The number of injured parties;

    b. The period of time over which the acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct took place; and

7

    c.   The number of such acts or encounters.

"Abusive conduct" consisting of or comprising more than one act of physical abuse, sexual abuse, sexual molestation or sexual misconduct shall be deemed to take place, for all purposes within the scope of this policy, at the time of the first such act or encounter.

(Dkt. 1-4 PageID #: 402; Dkt.45-3 PageID # 1003.)

The "abusive conduct" of the Lamies for which Chicago Title seeks to establish the liability of Baby Fold in the Underlying Lawsuit, is one "abusive conduct," regardless of such misconduct being "performed by one person or two or more people acting together," "[t]he period of time over which the acts of physical abuse . . . took place" or "[t]he number of such acts or encounters," and such misconduct is "deemed to take place, for all purposes within the scope of this policy, at the time of the first such act or encounter." Accordingly, because the Physical Abuse Forms in the 2010 and 2011 policies both include such language, if the "abusive conduct" by the Lamies first took place during the 2010 policy period rather than the 2011 policy period, it is irrelevant. Both the 2010 Primary Policy and the 2011 Primary Policy would then deem the "abusive conduct" to have taken place during the 2010 policy period.

Moreover, the issue of coverage for "abusive conduct" occurring during multiple policy periods is also expressly addressed in the 2010 and 2011 Primary Policies under SECTION III, Paragraph 2 of the Physical Abuse Form, as amended by Endorsement PI-SO-IL-1, which provides:

2. The limit of insurance shown in the Declarations for each "abusive conduct" is the most we will pay for all "damages" incurred as the result of any claim of "abusive conduct". Two or more claims for "damages" because of the same incident of "abuse conduct" will be considered a single claim, unless the "abusive conduct" is interrelated, at different times, and to different claimants, then each claim will be handled separately. *Such claims, whenever made, shall be assigned to only one policy (whether issued by this or any another [sic] insurer) and if that is this policy, only one limit of insurance shall apply*.

(Dkt. 1-4 PageID #: 399-400, Dkt. 45-3 Page ID #: 1000.) (emphasis added.)

Because the limits of liability provided under the 2010 and 2011 Primary Policies are identical (Dkt. 1-4 PageID #: 165: Dkt. 45-3 Page ID #: 777), if the abusive conduct alleged in the Underlying Lawsuit first occurred when the 2010 Policy was in effect, it has no bearing on the total limit of liability provided by PIIC. *See Phila. Indem. Ins. Co. v. Olympia Early Learning Ctr.*, 980 F. Supp. 2d 1266, 1273 (W.D. Wash. 2013) ("*Olympia*") (holding that the PIIC "one abusive conduct" policy language operates to "limit [the amount] of insurance available for bodily injury arising from multiple claims of abuse over multiple policy periods …"). *See also Frigo v. Motors Ins. Corp.*, 271 Ill. App. 3d 50, 63 (1st Dist. 1995) ("It is thus clear that anti-stacking clauses are enforceable and not void as against public policy.")

The *Olympia* case is directly on point. In *Olympia*, Olympia was insured by PIIC from 2007 to 2011 under multiple PIIC policies containing essentially the same definition of "abusive conduct" as the 2010 and 2011 policies in this case. *Olympia*, 980 F. Supp. 2d at 1267-69. Olympia sought coverage from PIIC for alleged abuse that occurred over several years. *Id*. PIIC contended that the "one abusive conduct" policy language limited coverage to the $1 million limit in a single policy. *Id.* at 1272. The court found that the issue presented was not a coverage question, but a question of policy limits. *Id*. The court further found that "[t]he subject policy language is not ambiguous, and is not susceptible to more than one reasonable interpretation," and the court held that the applicable limit of liability was a $1 million dollar limit provided by one policy. *Id*.

Pursuant to the unambiguous and enforceable language of the 2010 and 2011 Primary Policies that both limit coverage for the same "abusive conduct" to a single, and identical, limit of liability provided by only one of the Policies, it is clear that Chicago Title cannot obtain the relief

9

it seeks in Counts II and III of the CTC Counterclaim. Accordingly, Counts II and IIII of the CTC Counterclaim should be dismissed with prejudice.

    II.    **COUNT II OF THE COUNTERCLAIM FAILS BECAUSE THERE IS NO INDEPENDENT COVERAGE FOR LIABILITY ON THE UNDERLYING CLAIM UNDER THE PROVISIONS OF THE EXCESS POLICIES**

Chicago Title contends in Count II that it there is coverage for Baby Fold in the Underlying Lawsuit under the 2010 and 2011 Excess Policies for $5 million dollars because the Excess Policies operate as umbrella policies to "drop down" as primary coverage, and there is no exclusion in the Excess Policies for physical abuse. Chicago Title is wrong.

Section 1 - Coverage, Paragraph 1, Insuring Agreement of the Excess Policies provides:

1. Insuring Agreement

We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit", whether or not collectible, which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "occurrence" or "personal injury" or "advertising injury" to which this insurance applies caused by an "offense" which:

    (a) Occurs, or is committed during the policy period and

    (b) Occurs, or is committed in the "Coverage Territory".

(Dkt. 45-4, PageID #: 1022; Dkt. 1-5, PageID #: 425.)

As included in the foregoing Insuring Agreement of the Excess Policies, the term "applicable underlying limit" is defined under Section V - Definitions, Subsection 3 as follows:

(a) if the policies of "underlying insurance" apply to the "occurrence" or "offense", the greater of:

    (1) The amount of insurance stated in the policies of "underlying insurance" in the Declarations of any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to the payment of claims; or

    (2) The "retained limit" shown in the Declarations or

10

    (b) If the policies of "underlying insurance" do not apply to the "occurrence" or "offense," the amount stated in the Declarations as the "retained limit".

The limits of insurance in any policy of "underlying insurance" will apply even if:

    (a) The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

    (b) The "underlying insurer" becomes bankrupt or insolvent.

(Dkt. 45-4 PageID #:1033; Dkt. 1-5 PageID #: 436.)

The term "underlying insurance" within the definition of "applicable underlying limit" is defined under Section V - Definitions, Paragraph 17 of the Excess Policy to mean "the policies listed in the Schedule of Underlying Insurance," which lists the Primary Policy, which is Policy # PHPK535747 for the 2010 Excess Policy, and Policy # PHPK689624 for the 2011 Excess Policy. (Dkt. 45-4, PageID ##: 1035, 1010. Dkt. 1-5. PageID ##: 438, 412.)

There is only one limit of liability provided under either of the Primary Policies for the physical abuse claims in the Underlying Lawsuit, which is the $1 million limit of liability provided under the Physical Abuse Coverage Form.[4] Because "the policies of 'underlying insurance' do in

---

[4] There is no limit of liability for abuse claims under the Primary Policies' Commercial General Liability Coverage Form pursuant to Endorsement PI-SS-2 IL (11/02), ABUSE OR MOLESTATION EXCLUSION / ABUSE OR MOLESTATION SUBLIMIT. (Dkt. 45-3 Page ID #: 923; Dkt. 1-4 PageID #: 314.) Paragraph 1 Endorsement PI-SS-2 IL (11/02) excludes coverage for "bodily injury", "property damage", "personal and advertising injury", or any other "injury", arising out of:

    (a)    the actual or threatened abuse or molestation of anyone by any person while in the care, custody or control of any insured, or
    (b)    the negligent
           (i) employment;
           (ii) investigation;
           (iii) supervision;
           (iv) reporting to the proper authorities, or failure to so report; or
           (v) retention;

11

fact apply to the 'occurrence' or 'offense'," that are the subject of the Underlying Lawsuit, the relevant portion of the definition of the "applicable underlying limit," in the Excess Policy under Section V - Definitions, is under Paragraph 3, Subparagraph (a), as opposed to Paragraph 3, Subparagraph (b). (Dkt. 45-4 Page ID #: 1033; Dkt. 1-5, PageID #: 436.)

Therefore, pursuant to Section V - Definitions, Paragraph 3, Subparagraph (b) of the Excess Policies the "applicable underlying limit" in regard to the Underlying Lawsuit is "the amount of insurance stated in the policies of 'underlying insurance' in the Declarations of any other available insurance," which is the $1 million Limit of Liability provided under the Physical Abuse Form, as is provided in the Schedule of Primary Insurance for the Excess Policies. (Dkt. 45-4 Page ID #: 1033; Dkt. 1-5, PageID #: 436.)

Coverage under the Excess Policies for the claims of physical abuse in the Underlying Lawsuit is subject to Endorsement PI-CXL-043 IL (2/06), SEXUAL OR PHYSICAL ABUSE OR MOLESTATION LIABILITY COVERAGE FORM SUBLIMIT, which provides as follows:

> COMMERCIAL EXCESS LIABILITY POLICY
>
> This policy is intended to include the Sexual or Physical Abuse or Molestation Coverageform, [*sic*] but only with the limits set forth below. These limits are included within, and not excess of, nor in addition to the Limits of Insurance stated in the Declarations.
>
> SEXUAL OR PHYSICAL ABUSE OR MOLESTATION LIABILITY COVERAGE SUBLIMITS

---

of any person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

Paragraph 2 of Endorsement PI-SS-2 IL (11/02) allows for a sublimit of liability for abuse or molestation, but only "[i]f a limit of liability is shown in item b below." No limit of liability is provided under item b of Endorsement PI-SS-2 IL (11/02) for either of the Primary Polices. (Dkt. 45-3, PageID #: 923; Dkt. 1-4 PageID #: 314.)

      Each "Abusive Conduct" Limit 250,000

      Aggregate Limit 500,000

(Dkt 45-4, PageID #: 1019; Dkt. 1-5, PageID #: 413.)

      As discussed in detail above, under SECTION III - LIMIT OF INSURANCE, Paragraph 2 of the Physical Abuse Form in the Primary Policies, the conduct alleged in the underlying action is "considered one 'abusive conduct' regardless of "[t]he number of injured parties," "[t]he period of time over which the acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct took place" and "[t]he number of such acts or encounters." (Dkt. 1-4 PageID ##: 399-400; Dkt. 45-3 Page ID #: 1000.)

      Pursuant to Endorsement PI-CXL-043 IL (2/06), SEXUAL OR PHYSICAL ABUSE OR MOLESTATION LIABILITY COVERAGE FORM SUBLIMIT, the Excess Policy "is intended to include the Sexual or Physical Abuse or Molestation Coverage form," which includes the provision in the Physical Abuse Form under SECTION III - LIMIT OF INSURANCE, Paragraph 2, by which the underlying conduct is deemed to be one "abusive conduct." (Dkt 45-4, PageID #: 1019; Dkt 1-5, PageID #: 413.)

      Accordingly, the applicable limit of liability under the one applicable Primary Policy and and Excess Policy for the Underlying Lawsuit is the $1 million "applicable limit of liability" under the Physical Abuse Form, and the $250,000 "Each 'Abusive Conduct' Sublimit" under the Excess Policy. Chicago Title therefore is not entitled to the relief it seeks in Count II of the CTC Counterclaim, because the Excess Policies clearly limit coverage for physical abuse under the $250,000 "Each 'Abusive Conduct' Sublimit". For this additional and separate reason, Count II of the CTC Counterclaim should be dismissed with prejudice.

### III. NEITHER COUNT I NOR COUNT III OF THE CTC COUNTERCLAIM PRESENT A JUSTICIABLE CONTROVERSY

Under Count I and Count III of the CTC Counterclaim Chicago Title seeks a declaration that there "is coverage" under 2010 Policies and 2011 Policies. Once this Court finds under PIIC's contention under Point I above that there is coverage under only one policy year, which provides a single limit of liability for the Underlying Lawsuit (*i.e.*, under either 2010 Policies or the 2011 Policies, but not both) and once this Court finds under PIIC's Point II above that the Excess Policies do not "drop down" as primary umbrella coverage, but instead provide excess coverage in the amount of $250,000 to the $1 million "applicable underlying limit" provided by the Physical Abuse Form in the Primary Policies, the remaining question of whether there "is coverage" under either the 2010 Policies or the 2011 Policies has no bearing on the total limit of liability, and is moot.

It is black letter law that, "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). *Compare Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 963 (N.D. Ill. 2000) (holding that contract claim is ripe when one party "manifests a definite intent prior to the time fixed in the contract that it will not render its performance under the contract when that time arrives") (citation omitted).

Here no party alleges that PIIC is not rendering its performance under the coverage it issued to Baby Fold. Currently PIIC is providing a defense for Baby Fold, subject to a reservation of rights under the 2011 Primary Policy, which would simply not change, whether coverage falls under the 2010 Policies or under the 2011 Policies. Furthermore, because the allegations in the CTC Counterclaim acknowledge that the 2010 Policies and the 2011 Policies are identical, no party has alleged that coverage under the 2010 Policies instead of the 2011 Policies would

14

somehow limit PIIC's performance. Thus, claims seeking a declaration today that there is coverage under either the 2010 Policies or the 2011 Policies do not present a present an actual controversy, because no facts that would establish conduct in one policy period versus another policy period have yet been established in the underlying action. Any ruling sought declaring that there is coverage under one policy year versus another would be based upon a contingent future event that would first need to be resolved in the Underlying Lawsuit. This does not require a stay of the CTC Counterclaim, however, because the issue in this action – the total available limit of liability under the Policies, can be decided by looking solely to the Policies, included/incorporated as exhibits to the CTC Counterclaim, for which the outcome will be the same without regard to which of the Policies are applicable, because the terms and conditions of the 2010 Policies and the 2011 Policies provide an identical single combined limit of liability for the Underlying Lawsuit, which is $1.25 million.

## Conclusion

For the forgoing reasons, this Court should enter an Order dismissing the CTC Counterclaim with prejudice.

Dated: November 16, 2017            Respectfully submitted,

/s Dirk Ehlers
Dirk Ehlers
David Curkovic
COPE EHLERS, P.C.
120 W. Madison St., Suite 1300
Chicago, IL 60602
(312) 549-9280
(312) 549-9389 facsimile
dehlers@copehlers.com
dcurkovic@copeehlers.com
**ATTORNEYS FOR PLAINTIFF
PHILADELPHIA INDEMNITY INSURANCE
COMPANY**

## CERTIFICATE OF SERVICE

The undersigned, an Illinois attorney, who is admitted to the bar of the United States District Court for the Northern District of Illinois, hereby certifies that a true and correct copy of **PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS 12(b)(6) MOTION TO DISMISS THE CHICAGO TRUST CO. AS ADMINISTRATOR OF THE ESTATE OF KIANNA RUDESILL'S COUNTERCLAIM** was served by CM/ECF case filing on November 16, 2017 on the counsel of record in this matter.

/s Dirk Ehlers